Joseph Curtis **FOSTER**; Jaimi Lynn Foster; Charles Bloch; Associated Aviation Underwriters, Plaintiffs–Appellants,

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

No. 89–16002.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 13, 1990.

Decided Jan. 24, 1991.

Patrick Talbot Hall, San Francisco, Cal., for plaintiffs-appellants.

Thomas B. Almy and Daniel L. Reich, U.S. Dept. of Justice, Vicki Leemon, Federal Aviation Admin., Washington, D.C., for defendant-appellee.

Before HUG, BEEZER and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Plaintiffs appeal the district court's grant of summary judgment in favor of defendant United States and dismissal of Plaintiffs' complaint. Plaintiffs' claim was based on the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (1988).

The district court granted summary judgment on the ground that the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a) (1988), barred the claim against the United States. We affirm.

## STATEMENT OF FACTS

In January, 1984, Joseph O'Brien (O'Brien) applied for a Class II medical certificate as a commercial pilot. Dr. William Brath (Brath) withheld issuance of the medical certificate, but recommended that O'Brien be issued a special issuance Class II medical certificate.[1] On September 24, 1984, O'Brien's application for a regular Class II certificate was denied by Federal Air Surgeon H.L. Reighard, who also determined that O'Brien's medical history precluded issuance of a special issue certificate. On January 28, 1985, Federal Air Surgeon Frank Austin (Austin), issued O'Brien a special issuance Class II certifi-cate, which was not valid for pilot-in-command privileges when carrying passengers for compensation. The special issuance certificate was only to be valid until January 31, 1986. To retain his special certificate, O'Brien was required to submit reports of his cardiovascular condition regularly to the Federal Aviation Administration (FAA).

On April 2, 1986, O'Brien again applied for a Class II certificate. After examining O'Brien, Brath issued him a special issuance Class II certificate with the same restrictions and requirements that had been placed on the certificate the previous year. Brath also recommended to the FAA that the restrictions on O'Brien's certificate be deleted. On May 5, 1986, Dr. Audie Davis, Manager of the FAA's Aeromedical Certification Branch, Civil Aeromedical Institute, issued O'Brien a special issuance Class II medical certificate pursuant to the Federal Aviation Regulations, 14 C.F.R. § 67.19 (1990). This certificate was valid for only one year, was contingent on positive results of regular physical exams and cardiovascular exams, and required O'Brien to cease his flying activities if he suffered any adverse medical changes.

On May 7, 1986, O'Brien suffered a heart attack. There is no evidence that O'Brien reported his heart attack to the FAA. O'Brien continued his flying activities, and on August 3, 1986, suffered fatal injuries when the helicopter he was piloting crashed. Plaintiffs' decedent, Joseph Foster, was also killed in the crash. Plaintiffs contend that the crash was caused when O'Brien was incapacitated by a heart attack.[2]

On June 7, 1988, Plaintiffs filed suit against the United States and Federal Air Surgeon Austin in the Northern District of California. Plaintiffs brought suit pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680 (1988), alleging that Austin negligently issued a special

---

1. For a full description of the regulatory framework of the issuance of medical certificates, *see infra* page 800.

2. For purposes of the summary judgment motion only, the United States accepted as true plaintiffs' allegation that O'Brien suffered a cardiovascular attack, incapacitating him and causing the crash of the helicopter.

issuance Class II medical certificate to O'Brien. In a written order dated July 6, 1989, the district judge granted the United States' motion for summary judgment, finding that there was no genuine issue of material fact with regard to the discretionary function exception to the FTCA. *See* 28 U.S.C. § 2680(a) (1988). It is from this order that Plaintiffs appeal.[3] We have jurisdiction over a final order from a United States District Court pursuant to 28 U.S.C. § 1291 (1988).

## DISCUSSION

### A. Standard of Review

■ This court reviews de novo a district court's determination that it lacks subject matter jurisdiction under the discretionary function exception. *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1021 (9th Cir.1989); *Chamberlin v. Isen*, 779 F.2d 522, 523 (9th Cir.1985).

### B. Regulatory Framework

The Federal Aviation Act created the FAA, and authorized it to issue certificates to pilots, designating in which capacity they can serve, and attaching any necessary limitations to insure safety in air commerce.[4] In addition to a pilot certificate, a medical certificate is required. 14 C.F.R. § 61.3(c) (1990). The authority to issue or deny medical certificates has been vested in the Federal Air Surgeon. 14 C.F.R. § 67.25(a) (1990).

The FAA issues Class I, II, and III medical certificates, each of which authorizes pilots to fly based on their medical histories. 14 C.F.R. §§ 67.13, 67.15, 67.17 (1990). The Federal Air Surgeon has discretion to issue special certificates to applicants who fail to meet the medical criteria for a standard certificate. 14 C.F.R. § 67.19(a) (1990). In issuing a special certificate, the Federal Air Surgeon may consider occupational criteria and the totality of the applicant's medical history. 14 C.F.R. § 67.19(b) (1990). The Federal Air Surgeon is also authorized to impose a variety of restrictions or limitations on the use of the certificate. 14 C.F.R. § 67.19(d) (1990).

### C. Discretionary Function Exception

The FTCA authorizes suits against the United States for damages "for ... personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (1988).

The FTCA includes a number of exceptions to this broad waiver of immunity. Specifically, 28 U.S.C. § 2680 provides that the FTCA "shall not apply to any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." Defendant United States argues that Austin's actions fall within this discretionary function exception, and that the district court therefore lacked subject matter jurisdiction over the claim.

■ Under the rule enunciated by *Berkovitz v. United States*, 486 U.S. 531, 536–37, 108 S.Ct. 1954, 1958–59, 100 L.Ed.2d 531 (1988), we must use a two-step test to determine whether the discretionary function exception applies. *Summers v. United States*, 905 F.2d 1212, 1214 (9th Cir.

---

**3.** The district court order also granted the motion to substitute the United States as defendant for Austin. Plaintiffs do not specifically challenge this part of the order, and we do not consider it on appeal. *See Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 738 (9th Cir.1986) (appellate court will not consider matters on appeal not specifically and distinctly argued in opening brief).

**4.** The Federal Aviation Act actually vests this authority in the Secretary of Transportation, 49 U.S.C.App. § 1422 (1988). The authority has been delegated to the Administrator of the FAA. 49 U.S.C. § 106(g) (1988); 49 C.F.R. § 1.47(a) (1989).

1990); *Kennewick*, 880 F.2d at 1025.[5] First, the court must determine "whether the challenged action is a matter of choice for the acting employees." *Summers*, 905 F.2d at 1214. If an element of judgment is involved, the court must then determine whether that judgment "is of a kind that the discretionary function was designed to shield." *Id.* (quoting *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958).

### (1) Was the Conduct Discretionary?

■■■ The discretionary function exception does not apply when the relevant statute or regulation specifically prescribes a course of action that the federal employee must follow. *See Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958. Authority to grant special issue medical certificates to pilots not meeting the medical requirements of first, second, or third class certificates is explicitly left to the discretion of the Federal Air Surgeon. *See* 14 C.F.R. § 67.19(a) (1990).[6] The regulation gives the Federal Air Surgeon the authority to grant a special issuance at his discretion "if the applicant shows to the satisfaction of the Federal Air Surgeon that the duties authorized by the class of medical certificate applied for can be performed without endangering air commerce." *Id.* The regulation also gives the Federal Air Surgeon authority to impose a number of conditions on the special issuance. 14 C.F.R. § 67.19(d) (1990). Thus, Austin's actions in authorizing a special issuance medical certificate for O'Brien were clearly discretionary conduct which may be protected by the discretionary function exception.

### (2) Was the Conduct Grounded in a Policy Decision?

The discretionary function exception would be inapplicable if Austin's discretion to grant special issue Class II certificates was not the type of decision intended to be shielded from tort liability. "The exception, properly construed, therefore protects

---

**5.** The "planning versus operational activity" distinction argued by Plaintiffs is no longer the law of this circuit. *See Chamberlin v. Isen*, 779 F.2d 522, 524 (9th Cir.1985) ("This circuit abandoned the planning/operational level distinction in light of *Varig's* focus on the 'nature of the conduct in question.'").

**6.** § 67.19 Special issue of medical certificates.

(a) At the discretion of the Federal Air Surgeon, a medical certificate may be issued to an applicant who does not meet the applicable provisions of § 67.13, § 67.15, of § 67.17 if the applicant shows to the satisfaction of the Federal Air Surgeon that the duties authorized by the class of medical certificate applied for can be performed without endangering air commerce during the period in which the certificate would be in force. The Federal Air Surgeon may authorize a special medical flight test, practical test, or medical evaluation for this purpose.

(b) The Federal Air Surgeon may consider the applicant's operational experience and any medical facts that may affect the ability of the applicant to perform airman duties including:

(1) The combined effect on the applicant of failure to meet more than one requirement of this part; and

(2) The prognosis derived from professional consideration of all available information regarding the airman.

(c) In determining whether the special issuance of a third-class medical certificate should be made to an applicant, the Federal Air Surgeon considers the freedom of an airman,

exercising the privileges of a private pilot certificate, to accept reasonable risks to his or her person and property that are not acceptable in the exercise of commercial or airline transport privileges, and, at the same time, considers the need to protect the public safety of persons and property in other aircraft and on the ground.

(d) In issuing a medical certificate under this section, the Federal Air Surgeon may do any or all of the following:

(1) Limit the duration of the certificate.

(2) Condition the continued effect of the certificate on the results of subsequent medical tests, examinations, or evaluations.

(3) Impose any operational limitation on the certificate needed for safety.

(4) Condition the continued effect of a second- or third-class medical certificate on compliance with a statement of functional limitations issued to the applicant in coordination with the Director, Flight Standards Service or the Director's designee.

(e) An applicant who has been issued a medical certificate under this section based on a special medical flight or practical test need not take the test again during later physical examinations unless the Federal Air Surgeon determines that the physical deficiency has become enough more pronounced to require another special medical flight or practical test.

(f) The authority of the Federal Air surgeon under this section is also exercised by the Manager, Aeromedical Certification Branch, Civil Aeromedical Institute, and each Regional Flight Surgeon.

only governmental actions and decisions based on considerations of public policy." *Berkovitz*, 486 U.S. at 537, 108 S.Ct. at 1959. The purpose of the discretionary function exception is "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984).

Whether or not the decision of the Federal Air Surgeon in granting special issue medical certificates is grounded in social policy has not been addressed by this circuit. The Eleventh Circuit, however, has held that the decisions of the Federal Air Surgeon in *not* granting a special issuance are shielded by the discretionary function exception.

> We agree with the government that the Federal Air Surgeon's decision not to issue an exemption from the regulations would fall within the scope of the discretionary function exception since the regulations expressly require the Federal Air Surgeon to determine whether the grant of an exemption would adversely affect public safety.

*Heller v. United States*, 803 F.2d 1558, 1564, n. 8 (11th Cir.1986).[7]

The decision of the Federal Air Surgeon to *grant* a special issuance medical certificate implicates the same policy concerns and medical judgments. Decisions regarding the grant or denial of a medical certificate are inherently tied to the FAA's public safety policies. The Code of Federal Regulations establishes a public policy that public safety is best served by allowing the Federal Air Surgeon to issue medical certificates, and expressly grants the Federal Air Surgeon the discretion to grant, deny or condition those certificates as he sees fit. We accept the Eleventh Circuit's rationale, and hold that Austin's decision to issue a special issuance Class II medical certificate to O'Brien is an inherently policy-oriented decision that requires consider-

ation of social and economic policies. Austin's actions are protected by the discretionary function exception to the FTCA, and Plaintiffs' claim must fail.

### D. Negligence Claims

Plaintiffs also raised negligence claims based on the good samaritan and duty to warn doctrines under the state law of California.

The district court declined to rule on these claims, as it dismissed Plaintiffs' action for lack of jurisdiction under the discretionary function exception. Because there is no lower court record on these issues, and because we affirm the district court's determination that it lacked jurisdiction over this action, we need not address these claims here.

AFFIRMED.

---

7. Heller sought damages for the negligent denial of a medical certificate. Heller's Class II medical certificate was withdrawn after Heller was diagnosed as having had a myocardial infarction.